### STOCKTON et al. v. RUSSELL et al.

(Circuit Court of Appeals, Fifth Circuit. November 25, 1892.)

#### No. 74.

INJUNCTION—WHEN GRANTED—EQUITY.

Defendant, who owned and controlled the majority of stock in a railroad company, and was president thereof, sold the same to complainants for $29,000. The latter paid $5,000 in cash, and for the balance gave their notes, payable in 90 days. By the contract defendant was to retain possession of the stock, with the right to vote the same, as security for the notes, but was to vote it as requested by complainants. Thereafter complainants were permitted to operate the road, and shortly afterwards one of them was elected president, and the other secretary, and both were made directors. Complainants, however, defaulted on the notes, and, though the time was extended 10 days, they never paid any part thereof. Thereafter the board of directors requested complainants to resign their positions, whereupon the latter took possession of the books and records of the company, discharged the superintendent and all the employes, and

put new employes in possession. The directors then passed a resolution requiring that the old superintendent be restored and have possession of the property, but complainants refused to comply therewith, or to recognize the authority of the board. Thereupon the board removed complainants from their official positions, and ordered them to turn over the property to defendant, as agent of the directors. On exhibiting these resolutions to the employes of the road, the property was turned over to defendant, but complainants again regained possession by means of warrants issued by a justice of the peace, charging the employes with criminal trespass. In the mean time they had expended money on the property, put heavy charges on it for labor and material, and had bought a steam ferry, to run in connection with it and other lines of transportation. To protect their possession, complainants filed the bill herein, and obtained a decree enjoining defendant from paying the employes, or from interfering with complainants' possession and control. *Held,* on appeal from the injunctional decree, that the same should be reversed, and that the bill was entirely without equity, and should be dismissed.

Appeal from the Circuit Court of the United States for the Northern District of Florida.

In Equity. Bill for injunction brought by James A. Russell, David M. Yeomans, and Horace Scott against John N. C. Stockton, S. L. Earle, Thomas P. Denham, Arthur Meigs, and the Jacksonville, Mayport & Pablo Railway & Navigation Company. Decree for complainants. Defendants appeal. Reversed.

C. M. & J. C. Cooper, for appellants.

H. Bisbee, (H. H. Buckman, on the brief,) for appellees.

Before PARDEE and McCORMICK, Circuit Judges, and LOCKE, District Judge.

McCORMICK, Circuit Judge. On February 10, 1892, John N. C. Stockton, as administrator of the estate of Alexander Wallace, deceased, one of the appellants, held and owned 571 shares of the capital stock of the Jacksonville, Mayport & Pablo Railway & Navigation Company, being a majority of the stock of said company, and he was entitled to have issued to him 442 additional shares of such stock, and had a lien on 83 shares of such stock of John B. Togni, for moneys due from said Togni to said estate On that date, he, as such administrator, joined by Mary Wallace, the widow of said Alexander Wallace, made a contract with the appellees, Yeomans, Russell, and Scott, for the sale to them of said stock. Appellees paid him $5,000 on account of said contract, the remainder of the consideration being payable in 90 days, according to said contract, and also evidenced by the promissory notes of said appellees of same date as the contract, payable 90 days after date, one note for $8,000, and one for $16,000. Neither of these notes, nor any part of said remainder of consideration money of said contract, has ever been paid. At the time said contract was made, the appellants John N. C. Stockton, Thomas P. Denham, S. L. Earle, and Arthur Meigs were directors of said company, and were a majority of the board, and said Stockton was president of said company. Thereafter appellees were permitted to operate the road under said board of directors and president; and on the 6th of April, 1892, at a meeting of said board of

directors, said Russell was elected president of the company, and said Yeomans was elected secretary and treasurer thereof, and they were elected directors by said board of directors, to fill vacancies caused by one William Wallace and said Togni having ceased to be directors; and the board of directors unanimously resolved that the delivery of the bonds of the company to the Mercantile Trust Company of New York, which the stockholders had authorized to be issued, be made with the direction to hold the said bonds until $31,150.92 be paid to John N. C. Stockton. The amount was made up of the remainder of the consideration of said stock contract, and some other items. Appellees defaulted, and failed to pay the remainder of said consideration, and, though said Stockton gave them an extension of time of 10 days on their notes therefor, they still failed to pay the same or any part thereof. After said default, the appellants, as the directors of said railway company, sought to have the bonds which had been placed in the hands of said trust company returned to said railway company, through the American Exchange National Bank of New York. Said board of directors thereafter, by resolution, requested said Russell and Yeomans to resign the positions, respectively, of president and secretary and treasurer, whereupon said Russell and Yeomans, by their agent, E. M. Yeomans, entered the office of the company in the early morning, and took away and removed the records and officers of the company, discharged the superintendent and all the employes of the company, and put new employes in possession. On March 26, 1892, the Jacksonville, St. Augustine & Halifax River Railway Company sold to the said Jacksonville, Mayport & Pablo Railway & Navigation Company all the capital stock of the Jacksonville Ferry Company and certain steam ferryboats, which property appears to have been paid for by appellees. On June 21, 1892, said Stockton, as administrator, and Mary Wallace, filed in the state court their bill against said Russell, Scott, and Yeomans, making the railway company also a defendant, for injunction against said Russell, Scott, and Yeomans, to have the court appoint a receiver to preserve the property, and for sale of the stock covered by said contract, and a restraining order was granted by said court. This suit was on June 25, 1892, transferred to the United States circuit court for northern district of Florida, on application of said Russell, Scott, and Yeomans. After said suit had been brought, said Russell, Scott, and Yeomans for the first time demanded that said Stockton, administrator, transfer said Wallace stock to them. On June 30, 1892, said board of directors passed a resolution requiring that Superintendent Earle be restored by said President Russell to his position of superintendent, and have possession of the property of the company belonging in the custody or control of the superintendent, to which said Russell replied that he refused to do so, and that he would not recognize the authority of the board, or be governed in any manner by any action it might take. Thereupon, on July 1, 1892, said board removed said Russell as president of said company, and said Yeomans, being absent from Jacksonville, and having absented himself for a considerable time, without the consent of the board of directors, was re-

moved from the office of secretary and treasurer of said company. and they were ordered to turn over the property of the company to said Stockton, as agent of the board of directors.   By further resolution, said Earle was declared to be superintendent of said company's railroad, and authorized to take possession of same and its property, and to assume management of same.   On exhibiting these resolutions to the employes in charge of rolling stock, they delivered possession of same to said Stockton and Earle, for said board of directors, and they proceeded with the operation of the road. Afterwards, to wit, July ——, 1892, said appellees, getting a warrant from a justice of the peace, on a charge of criminal trespass, against the employes of said railway company, arrested the employes in charge of the property of said company and operating its trains, and took possession of said railroad and rolling stock.   They then immediately filed their bill herein, got a restraining order, and afterwards the decree and injunctional order appealed from herein, which enjoins the defendants from paying any officer or employe of said road; from interfering in any manner with the complainants (appellees) in the possession and control of said road and all of its property; from voting, or offering to vote, any of the stock of said company; from exercising, or attempting to exercise, any powers as president or as directors of said company; from exercising, or attempting to exercise, any acts of ownership or control over any part of said railroad or its property.

It is clear from this record that appellant Stockton was to hold the stock about which he contracted with appellees as security for the $24,000 which they were to pay in 90 days from the date of said contract, and that he was to so hold it as to entitle him to vote it, but he was to vote it as they should instruct.   It is apparent, also, that he did this until they were in default, putting appellees in control of the road as officers of the company, and that, after the appellees had made default, the appellant undertook, by exercising his power as the holder of the stock, to resume possession and control of the property.   Whether his acts and efforts in this respect were regular and strictly lawful becomes wholly immaterial in the view we take of the complainants' (the appellees') bill.   To take their view of it, they bought a property for $29,000, of which they paid only $5,000, and were to pay the other $24,000 in 90 days.   The property was represented by a certain number of shares of stock in a railroad.   The stock was to be transferred to them, but was to be held by their vendor as his security; was to be voted by him as they instructed.   They were put in control of the railroad.   They expended large sums of money on the property, and put heavy charges on it for labor and material and right of way; bought a steamferry property, to run in connection with it and with other lines of transportation; have, in their view, greatly enhanced the value of the property; are amply solvent, and able and willing to pay all they owe the appellant, but do not now pay or tender any part, and never have paid him any part, of the $24,000.   In some way he resumed possession of the road, and its employes and officers were receiving their pay from him, and reporting and delivering the earn-

ings as he directed. In some way the appellees reclaimed possession, and, being fearful that they could not hold it peaceably and fully, they attempt to come into equity, and get the court to aid them with a sweeping injunction, and to take their embarrassments off their hands; operate the property, and extend its operations; sell bonds, and pay part of the proceeds into court, to secure whatever they may owe the plaintiff; and to grant them general relief. To our minds it seems so clear that the bill shows no equity that no argument or authority could make it clearer. The decree appealed from should be reversed, at appellees' cost, with direction to the court below to dismiss the complainants' bill; and it is so ordered.